UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIMBERLY-CLARK CORPORATION,

       Plaintiff,

       v.

CARDINAL HEALTH 200, LLC,
f/k/a CARDINAL HEALTH 200,
INC.,

       Defendant.

CIVIL ACTION

NO. 1:10-CV-0034-CAP

**O R D E R**

This matter is before the court on the parties' cross motions to vacate dismissal and reopen this case [Doc. Nos. 218, 219]. Defendant Cardinal Health 200, LLC's (Cardinal) motion also seeks to enforce a purported settlement agreement between the parties, and plaintiff Kimberly-Clark Corporation (Kimberly-Clark) seeks a lift of the court's stay, which was in effect at the time of the dismissal, <u>see</u> [Doc. No. 211], for the limited purpose of considering Kimberly-Clark's proposed motion for a preliminary injunction attached to its instant motion.

As an initial matter, the parties' cross motions clearly agree that the court's order administratively closing the case should be vacated and the case re-opened, albeit for different purposes. Because those motions were timely filed (after extensions), the motions are GRANTED IN PART, and the order of June 1, 2011 [Doc. No. 215] is VACATED. The remainder of this order addresses the

parties' other contentions in their motions and the next steps in this protracted, contentious litigation.

**I.   Background**

Plaintiff Kimberly-Clark and defendant Cardinal are consumer products corporations manufacturing and marketing competing surgical gowns [Doc. No. 30 ¶¶ 7, 17-19].[1] Kimberly-Clark filed this trademark action against Cardinal on January 6, 2010 [Doc. No. 1]. On February 16, 2010, Kimberly-Clark filed a second amended complaint against Cardinal, alleging false advertising under the Lanham Act § 43(a)(1)(B) and deceptive trade practice under the Georgia Uniform Deceptive Trade Practice Act (GUDTPA), O.C.G.A. § 10-1-372 [Doc. No. 30]. On March 2, 2010, Cardinal filed an answer and counterclaims also alleging false advertising under the Lanham Act and violation of GUDTPA, as well as violation of the California Business & Professional Code (§§ 17200, 17500), Connecticut Unfair Trade Practice Act (Conn. Gen. Stat. § 42-110c(a)) and the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/4) [Doc. No. 34]. Cardinal amended its counterclaims on November 22, 2010, and on December 13, 2010,

---

[1] Surgical gowns are medical devices under the Food, Drug and Cosmetic Act (FDCA) and are regulated by the Food and Drug Administration (FDA) [Doc. No. 133 ¶ 23] (admitting allegation).

Kimberly-Clark filed an answer to the amended counterclaims [Doc. Nos. 132, 133].

**A. Plaintiff's False Advertising Claim**

Kimberly-Clark states that it was the first in the industry to develop and manufacture "breathable, impervious surgical gowns, meeting ASTM F1671 standards" for protection against fluid, viral, and/or bacterial penetration [Doc. No. 30 ¶¶ 11, 15]. Kimberly-Clark further states that it has manufactured and marketed a line of those gowns since 1999--the KC400 MicroCool Breathable Impervious Surgical Gown (KC400 MicroCool) is one such gown. Id. ¶¶ 11, 14. Kimberly-Clark states its KC400 MicroCool gowns have FDA clearance to be marketed as breathable and impervious [Doc. No. 30 ¶ 15].

Kimberly-Clark alleges that Cardinal falsely advertises and promotes its SmartGown as "'the only breathable, fully impervious surgical gown in the industry,' based on ASTM F1671 testing." Id. ¶¶ 18, 20. Because its KC400 MicroCool gown is also sold in the market, Kimberly-Clark contends that the SmartGown is not "the only breathable, impervious surgical gown in the industry." Id. ¶¶ 15, 21, 23. Furthermore, Kimberly-Clark alleges that Cardinal's representation in its advertising material that the SmartGown is

"impervious", "fully impervious", or "Classified as AAMI Level 4"[2] creates a false, misleading and deceptive impression that these claims have been approved by the FDA--a clearance, Kimberly-Clark alleges, Cardinal has neither sought nor received. Id. ¶¶ 24-25.

**B. Defendant's False Advertising Counterclaims**

Cardinal has manufactured and marketed its SmartGown line of surgical gowns since 2001 [Doc. No. 132 ¶ 17]. Cardinal states that it promotes the SmartGown as classified at AAMI Level 4 and "[t]he only breathable, fully impervious surgical gown in the industry." Id. It alleges that, as of at least 2002, Kimberly-Clark's KC400 MicroCool gown does not meet ASTM-1671-97(a) testing standards (the version of the ASTM F1671 test method in place when Kimberly-Clark filed for FDA clearance for its KC400 MicroCool gown). Id. ¶ 34. In 2008, Cardinal commissioned a comparison study of gowns marketed by Cardinal and its competitors (including Kimberly-Clark). Id.

---

[2] The AAMI Level classification is a component of the AAMI PB70 classification system [Doc. No. 132 ¶ 31]. The AAMI PB70 system provides a protocol for applying standard test methods (including the ASTMl 1671 method) to the critical zones and "critical zone components (materials, seams and points of attachment)" of protective clothing. Id. The classification of tested clothing from AAMI Level 1 (lowest) through 4 (highest) reflects the liquid barrier performance of the clothing's critical zone components. Id. Under AAMI PB70, protective clothing is classified on the AAMI Level scale based on the critical zone component with the lowest liquid barrier performance, with Level 1 denoting the lowest barrier performance and Level 4 the highest. Id.

¶¶ 36-37.[3] The test results, according to Cardinal, confirmed that the KC400 MicroCool gown is not impervious because its sleeve seams failed ASTM 1671 testing. Id. ¶ 38. Cardinal alleges that Kimberly-Clark falsely advertises the KC400 MicroCool gown as impervious and as passing the ASTM F1671 test. Id. ¶¶ 39, 46.

Additionally, Cardinal states that Kimberly-Clark advertises its surgical gowns using a Color-Key system in which the KC400 MicroCool gown is assigned the red Color-Key code, identifying it as an "impervious type surgical gown." [Doc. No. 132 ¶¶ 47-48, 51, 55-62, 65]. The three components of the Color-Key system include the neck band, packaging, and the tie-card of the color coded gown Id. ¶ 51. Cardinal alleges that the "Kimberly-Clark Color-Key system, and specifically, the tie-card it attaches to its MicroCool gowns, constitutes literally false representations because the red area on the tie-cards depicts a gown with a sleeve that is impervious." Id. ¶ 68.

Finally, in 2009, Kimberly-Clark filed for FDA clearance to market a new version of the MicroCool gown [Doc. No. 133 ¶ 69], and Cardinal claims this filing and subsequent approval is another basis for a false advertising claim. Kimberly-Clark's 510(k)

---

[3] Cardinal states that its study was performed using the AAMI PB70 test protocol, under which the sleeve seams (critical zone components) of the KC400 MicroCool gown were tested using the ASTM F1671 method [Doc. No. 132 ¶¶ 36-37].

premarket notification to the FDA states that the "Kimberly-Clark *MicroCool* Surgical Gown, Breathable High Performance, KC400 . . . meets the Level 4 Requirements of the AAMI Liquid Barrier classifications." [Doc. No. 133-7, at p. 10]. Cardinal alleges that, contrary to that representation, the MicroCool gown manufactured and marketed by Kimberly-Clark after receiving FDA clearance in 2009 fails the ASTM F1671 test and does not meet AAMI Level 4 classification standards [Doc. No. 132 ¶ 70]. Cardinal alleges that the existence of the 2009 510(k) premarket notification creates a false, misleading and deceptive impression that the currently marketed KC400 Microcool gown meets AAMI Level 4 and is impervious. Id. ¶ 73.[4] Cardinal further contends that Kimberly-Clark's continued advertising of the imperviousness of the KC400 gown, is "false, misleading and deceptive and create[s] a false, misleading and deceptive impression that Kimberly-Clark KC400 MicroCool brand gowns are impervious gowns based on ASTM standardized testing." Id. ¶ 73. Cardinal argues that Kimberly-

---

[4] Cardinal specifically alleges the "existence" of this document creates the false impression, rather than any real advertisements or claims on the KC400 MicroCool gown. This is presumably the case because, as Kimberly-Clark states in its answer to the counterclaims, it had not commercialized, marketed, or sold the gown subject to the 2009 510(k), nor has it made an express representation that its gowns meet AAMI Level 4 standards as the FDA cleared Kimberly-Clark to make. See Am. Answer to Countercl. ¶¶ 69-71 [Doc. No. 133].

Clark's advertising and labeling of the KC400 MicroCool gown as impervious, passing ASTM F1671 testing, and meeting AAMI Level 4 is false. Id. ¶ 73.

## C. Settlement Negotiations and Subsequent Activity

This matter has been fiercely litigated--especially with regard to discovery--by both sides since its inception. In February 2011, the court stayed the action for thirty days so that the parties could engage in settlement negotiations [Doc. No. 163]. On March 16, 2011, the parties filed a status report (at the court's direction) indicating they believed private mediation could help lead to a negotiated settlement [Doc. No. 176]. Adopting the Report and Recommendation (R&R) of the special master, on May 4, 2011, the court ordered a further stay of discovery proceedings, pending the court's ruling on dispositive motions for judgment on the pleadings, and ordered the parties to report to the court on the results of the planned mediation [Doc. No. 211].

On May 30, 2011, both parties filed notices with the court stating a settlement between business representatives of the parties had been reached with the help of the private mediators [Doc. Nos. 213, 214]. Both parties also stated formal documentation of the settlement was in progress. Id. Having been notified of the settlement, on June 1, 2011, the court administratively closed the case [Doc. No. 215]. The order dismissed the action without

prejudice to the parties to reopen the action or vacate the order of dismissal within ninety days. The dismissal would be with prejudice if neither party so moved.

On August 26, within the ninety-day window, the parties filed a joint stipulation stating they had "not yet finalized their settlement agreement" and asking the court to reopen the case. Rather than reopen, the court extended the time for the parties to formalize the settlement or exercise their right to reopen the action by an additional sixty days [Doc. No. 217].

Unfortunately, the process of documenting the purported settlement did not go as everyone hoped. In late October, both parties filed motions to vacate the dismissal [Doc. No. 218, 219] because the settlement had essentially fallen apart. Cardinal's motion primarily asks the court to enforce the material terms agreed upon by the business representatives "as reflected in the mediated Settlement Term Sheet." [Doc. No. 218, at 9]. Alternatively, Cardinal asks the court to reopen the case, rule on five motions that were pending at the time the case was administratively closed, and then refer the case to the special master again for continued discovery. Kimberly-Clark, on the other hand, asks the court to reopen the case and lift the stay for the "limited and sole purpose" of considering a new motion for

preliminary injunction against Cardinal [Doc. No. 219, at 1], which Kimberly-Clark attached as an exhibit to the motion to vacate.

## II.  Cross Motions to Vacate and Reopen [Doc. Nos. 218, 219]

As the court stated at the outset, both parties have moved to vacate the order administratively closing the case [Doc. No. 215]. Accordingly, both the parties motions to vacate are GRANTED IN PART to the extent they seek to reopen this action. It is apparent that Cardinal's motion to enforce the purported settlement should be denied because the "Settlement Term Sheet" it points to expressly states that it is not binding on the parties. Further, the court does not believe granting preliminary injunctive relief to either party is appropriate at this time, given the lapse of time since the motions were filed.

### A.  Cardinal's Motion to Enforce Settlement [Doc. No. 218]

Cardinal claims that during their mediation, the parties reached a negotiated settlement. On May 21, 2011, business representatives from Cardinal and Kimberly-Clark, along with their counsel, participated in a full-day mediation with the Honorable Judge Stanley Birch (retired) and Professor Francis McGovern. On Sunday May 29--the day before the parties' were required to report back to the court on whether mediation was successful--Judge Birch and Professor McGovern conducted a last-ditch mediation telephone conference. This time, only the business representatives

participated--no lawyers. At the end of that phone conference, the business parties apparently reported to their counsel they had agreed on enough terms to say they had settled. The next day, as scheduled, both parties' counsel filed notices on the docket indicating a settlement had been reached [Doc. Nos. 213, 214].

From there, things began to unravel. Cardinal only presents the June 21 email from Judge Birch that it contends contains the parties' "agreed settlement terms." Ex. A to Mot. to Vacate [Doc. No. 218-1]. This is the "Settlement Term Sheet" Cardinal seeks to enforce. Kimberly-Clark's brief and exhibits shed a little light on what happened between May 30 and June 21: Professor McGovern apparently emailed a five-bullet-point "term sheet" summary on June 9, and Kimberly-Clark's counsel replied on June 9 and 11 saying he thought McGovern's draft was missing several details, some of them "critical". Ex. C-E to Opp'n to Mot. to Vacate [Doc. No. 221-3 to -5]. According to Cardinal, however, these disputes over small details should not matter because the parties "unequivocal and undisputed belief that a settlement was reached is controlling." Reply to Mot. to Vacate 2 [Doc. No. 223].

Given Cardinal's insistence that Judge Birch's email "documented the parties' settlement in an enforceable term sheet," id., a close examination of that email is in order. Judge Birch states that he and Professor McGovern had reviewed "respective term

10

sheets provided by each" party, but he did "not recall any discussion on that Sunday morning conference call as to several items you each, respectively, have included in your drafts." Ex. A. [Doc. No. 218-1]. This is not surprising, since both parties admit the final documentation, including some dickered terms, would be forthcoming. So Judge Birch attempted to "set out . . . the terms agreed to that [he and Professor McGovern] both recall having been discussed and agreed upon by the business representatives participating in the conference call." <u>Id.</u> The very first term of the "settlement," as Judge Birch stated that he and the professor understood it, provided: "None of these terms are binding on the parties and [sic] until the parties enter into a definitive written agreement and the pending litigation has been dismissed upon execution of such definitive written settlement agreement." <u>Id.</u>

The plain language of this email reflects the intent of the business representatives of the parties that there **was** no "binding" and enforceable settlement agreement until the documentation was complete. Cardinal asks the court to "enforce the Settlement Term Sheet as written," referring to Judge Birch's email. Mot. to Vacate 7 [Doc. No. 218]. To the extent the email is evidence of the parties' "meeting of the minds," the primary point to which they agreed was that the terms Cardinal asks to enforce are not enforceable.

Cardinal tries to get out from under this unambiguous statement in various ways, but none of them are persuasive. It argues that the use of "until" in the first term of the purported settlement agreement means that the parties would not execute the other terms of the agreement until documentation and dismissal was complete. But the first term, as stated by Judge Birch, says that **no** terms are binding until the parties complete the "definitive written agreement." For this court to say the parties were, in fact, bound by the other terms even without a definitive written agreement would directly conflict with this express language. Further, Cardinal argues that Kimberly-Clark's filing with the court that the parties had reached a settlement means it is bound by that representation. The lawyers for both parties--none of whom participated in the May 29 call--were under the impression that a settlement had been reached, so each side filed notices representing this belief. Kimberly-Clark was neither incorrect in its belief, nor misrepresenting the current status, which was that the settlement was "currently being documented." [Doc. No. 214]. Of course, as we learn later from Judge Birch's email, completing this documentation was a necessary condition of the enforceability of the settlement. Accordingly, Cardinal's motion [Doc. No. 218] is DENIED IN PART, to the extent it seeks to enforce a settlement agreement that was not binding on the parties.

**B.   Kimberly-Clark's Motion for Lift of Stay and Leave to File a Motion for Preliminary Injunction [Doc. No. 219-1]**

Kimberly-Clark's reason for asking for a lift of the stay is so that it can move for a preliminary injunction; it attached the motion to its motion to vacate. <u>See</u> [Doc. No. 219-1]. Kimberly-Clark did not separately file a motion for injunction on the docket, so the court construes this as a motion for leave to file a motion for preliminary injunction. However, the court sees two reasons not to address the motion for preliminary injunction itself. First, as discussed below, this order resolves the dispositive motions for judgment on the pleadings, so the stay is automatically lifted. Thus, Kimberly-Clark could now move for a preliminary injunction without a lift of the stay. Second, because ten months have passed since the supposed motion was filed, the court will not address the allegations contained therein without "fresh" consideration by the parties (including the business representatives) as to the necessity or applicability of the arguments made. Thus, the court DENIES AS MOOT the motion for lift of the stay, and DENIES WITHOUT PREJUDICE the construed motion for leave to file a motion for preliminary injunction.

**IV. Pending Motions at Time of Administrative Closure**

At the time the case was administratively closed, there were several motions before the court ready for adjudication. The April

6, 2011, R&R of the Special Master [Doc. No. 187] lists the motions pending as of that date and recommended staying the case (except for completing briefing in progress) pending a ruling on the parties' cross motions for judgment on the pleadings [Doc. Nos. 178, 179]. Having re-opened the case, the court now addresses three of the then-pending motions. The court will defer re-activation of the other pending motions until after the parties submit a status report describing the next steps in the litigation.

**A.   The Parties Cross Motions for Judgment on the Pleadings [Doc. Nos. 178, 179]**

On March 9, 2011, the court granted both parties' motions for leave to file a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) [Doc. No. 168]. Cardinal filed its motion [Doc. No. 178] seeking dismissal of Kimberly-Clark's second amended complaint. Kimberly-Clark filed its motion [Doc. No. 179] seeking dismissal of Cardinal's amended counter-claims.

**1.   Legal Standard**

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). A pleading must be dismissed if it does not allege specific facts supporting a "plausible claim for relief." Ashcroft v. Iqbal,

556 U.S. 662, 679 (2009). A pleading must offer more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" <u>Id.</u> at 678. Although courts "must take all of the factual allegations in the complaint as true, [courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Id.</u>; <u>see also</u> <u>Andrx Pharm., Inc. v. Elan Corp., PLC</u>, 421 F.3d 1227, 1230 n.1 (11th Cir. 2005).

### 2. Analysis

What does it mean to say a surgical gown is "impervious"? Is the meaning of impervious any different from "fully impervious"? These are the key questions that must be answered in this litigation. These two competitors make surgical gowns marketed as impervious or fully impervious, and each alleges the other's marketing claims using the terms are false. The problem is, depending on when or how you ask each party what these terms mean, you get shifting--even if they are not contradictory--answers. The court DENIES both parties' motions for judgment on the pleadings because both Kimberly-Clark's second amended complaint and Cardinal's counterclaims state claims for relief and have questions of fact that must be resolved. The only exceptions are that Count IV of Cardinal's counterclaims under California law is DISMISSED due to lack of standing, and Cardinal cannot proceed on its Lanham Act false advertising counts on the basis of allegations regarding

the existence of the 2009 510(k) submission or its alleged impact on consumers' purchases of the MicroCool gown for sale at that time.

### a.   Cardinal's Motion

First, the court addresses Cardinal's motion for judgment on the pleadings. To recap, Kimberly-Clark markets an "impervious" surgical gown, Cardinal markets its competing gown as "the only . . . fully impervious" gown on the market, and Kimberly-Clark claims this statement is false under the Lanham Act. Cardinal argues it is entitled to judgment on this claim because Kimberly-Clark does not allege it also manufactures or sells a "fully impervious" surgical gown. Cardinal argues in its reply brief, "To grant Cardinal's motion . . ., this Court need not decide what 'impervious' means at all. The only question that this court needs to answer is whether 'impervious' and 'fully impervious' must mean the same thing despite Kimberly-Clark's failure to allege that they do." [Doc. No. 200, at 8] (emphasis in original).

The succinct answer to Cardinal's succinct question is "No," so by Cardinal's own argument its motion is DENIED. Neither party has pointed to a legally binding definition of impervious, much less one for "fully impervious." Thus, the two terms do not require the same definition. Ultimately, there may turn out to be a difference or no difference. But Kimberly-Clark's failure to allege

16

a difference is not fatal to its claims. Rather, it has alleged Cardinal's claim that it is the "only" "fully impervious" gown on the market is false. Second Am. Compl. ¶ 23 [Doc. No. 30]. The falsity of Cardinal's advertising is a factual allegation, and construing it and the other factual allegations in Kimberly-Clark's complaint as true, it is enough to raise a plausible claim to relief for false advertising.[5]

### b.   Kimberly-Clark's Motion

Second, Kimberly-Clark's motion for judgment on the pleadings as to Cardinal's counter-claims must also be denied in large part. Kimberly-Clark makes four arguments as to why the various claims should be dismissed. First, it argues the FDCA impliedly precludes the Lanham Act false advertising claims and preempts the state-law claims, based on the fact that the FDA approved Kimberly-Clark's 510(k) submission including the "impervious" claims.[6] Second, Kimberly-Clark argues that Cardinal's allegations that Kimberly-Clark markets "misbranded" or "adulterated" products are barred by

---

[5] Kimberly-Clark's opposition to Cardinal's motion also argues Cardinal's motion is frivolous and sanctionable. No motion for sanctions on this issue is before the court, and the court would not grant one if there was.

[6] In a sub-argument to this portion of the brief, Kimberly-Clark also argues Cardinal's "fraud on the FDA theory" is preempted. Cardinal's response expressly disclaims it raises, and therefore waives, such a claim. See [Doc. No. 191, at 18-19].

21 U.S.C § 337(a) prohibiting private actions to enforce the FDCA. Third, Kimberly-Clark argues the counterclaims under Georgia, Connecticut, and Illinois law are barred by those states' safe harbor statutes because the conduct was in compliance with the FDA's pre-market clearance. Fourth, it argues the California false advertising claim must be dismissed because Cardinal lacks standing. The court will address each argument in turn.

### (i) Conflict Preclusion and Preemption

There are two reasons Kimberly-Clark's preclusion/preemption argument does not warrant granting judgment on the pleadings. First, the preclusion argument is not adequately justified in the motion, and second, it is unclear--based on the briefing before the court--what the impact of the FDA's approval of the "impervious" claim is, given the dispute of fact over the term.

First, while Kimberly-Clark makes several general statements regarding the doctrines of conflict preclusion (between conflicting federal laws, here the FDCA and the Lanham Act) and preemption of state law, it does not adequately explain when or how these doctrines should be applied. Kimberly-Clark repeatedly points to the approval of the 501(k) and its "impervious" claim in 1998, generally arguing, "[T]he FDA's clearance of a device reflects a determination that the proposed marketing language is not false or misleading." [Doc. No. 179-1, at 12]. This statement glosses over

the complex interplay between the FDCA and the Lanham Act. See Mut. Pharm. Co. v. Ivax Pharm., Inc., 459 F. Supp. 2d 925, 933-35 (C.D. Cal. 2006) (describing the "different, although somewhat overlapping" purposes of the acts and how courts have tried to strike a "balance between the two, allowing breathing space for the Lanham Act, but at the same time not letting it be misused as a naked attempt to enforce the FDCA and its implementing regulations"). Moreover, one of the cases Kimberly-Clark cites in its brief, Cytyc Corp. v. Neuromedical Systems, Inc., 12 F. Supp. 2d 296 (S.D.N.Y. 1998), did not even address the preclusion doctrine; rather, it held the claims at issue were, "as a matter of law, . . . neither false nor misleading" under the Lanham Act due to the FDA's approval of the marketing claims, id. at 301. While Cytyc may support Kimberly-Clark's desired outcome, it is not relevant to the grounds Kimberly-Clark actually raised in its motion--namely, preclusion and preemption.

Second, judgment on the pleadings is also inappropriate because the term "impervious" cannot be determined as a matter of law, at least not at this stage of the litigation. Cardinal's counter-claims are largely based on the fact that it attaches a different meaning to--or it would require a different test to substantiate--the term "impervious" than Kimberly-Clark does in its marketing claims, and Cardinal's interpretation would mean

19

Kimberly-Clark's advertising is false.[7] One premise of most of Kimberly-Clark's arguments for judgment on the pleadings (including the preclusion/preemption argument) is that "impervious" means what Kimberly-Clark says it means. Specifically, Kimberly-Clark argues "'impervious' is a term of art defined by the FDA to mean passing ASTM F1671," based on a 1995 "guidance document" issued by the FDA. Thus, the argument goes, because the FDA issued a clearance letter approving Kimberly-Clark's 510(k) pre-market notification and advertising, Cardinal should not be able to raise claims that Kimberly-Clark's "impervious" advertisements are false.

The problem with this thread of Kimberly-Clark's argument is that the FDA "definition" is not definitive as a matter of law. The only evidence of the required meaning Kimberly-Clark points to is the FDA "guidance document" issued in 1995. This document provides that, as an "interim policy," the FDA "accepts the ASTM ES 21 and ASTM ES 22 Standard Test Methods as voluntary standards used by manufacturers if they wish to make a liquid-proof or impervious claim." [Doc. No. 133-15, at 4]. But Kimberly-Clark does not point to any authority to support the proposition that this supposed "definition" has the force of law--like a statute or regulation.

---

[7] Cardinal's position is that one cannot make an "impervious" claim unless the sleeve seams do not leak. Kimberly-Clark argues the ASTM F1671 test does not require seam testing unless an express claim of protection is made about the seams.

According to the FDA's own website, "Guidance documents represent FDA's current thinking on a topic. They do not create or confer any rights for or on any person and do not operate to bind FDA or the public." FDA Regulatory Information, Guidances, http://www.fda.gov/regulatoryinformation/guidances/default.htm (last visited Aug. 15, 2012); see also Medical Devices Guidance Documents, About Guidance, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/ucm108067.htm (last visited Aug. 15, 2012) ("Guidance documents do not create or confer any rights for or on any person and do not operate to bind FDA or the public. An alternative approach may be used if such approach satisfies the requirements of the applicable statue [sic], regulations, or both.").

While the FDA's guidance documents may be good **evidence** of what the standard or definition of imperviousness may be, it is not a definition as a matter of law. As the special master has previously noted:

> The question of whose science proves what fact is a matter of extreme dispute in this case. The resolution of that dispute will be an issue for the Court after hearing from experts on both sides. To the extent that the fact to be established is whether a gown is "impervious," the relevance and reliability of the scientific findings will be measured according the Court's definition of the word "impervious."

R&R of Mar. 9, 2011 [Doc. No. 169, at 4]. At this stage, the court will not say what the definition of "impervious" is, so the falsity of **either** party's imperviousness claims cannot be determined as a matter of law.[8] Moreover, the "Color-Key" system drawings are different from the drawing the FDA approved, so the court likewise cannot hold, at this stage, that Kimberly-Clark's "Color-Key" system does not violate the Lanham Act.

Thus, Kimberly-Clark's arguments as to the preemptive or preclusive effect of the 510(k) approval in the motion for judgment as a matter of law must fail. Likewise, the court cannot hold that all of Cardinal's false advertising claims (whether based on federal or state law) should be dismissed because the term "impervious" as used in the Kimberly-Clark advertisements cannot be determined as a matter of law--at least not yet.

---

[8] What is clear in this case, however, is that the FDA approved Kimberly-Clark's 510(k) submission, knowing full well that Kimberly-Clark had not tested the seams, yet the FDA allowed Kimberly-Clark to make its "impervious" claim anyway. What is also clear is that the ASTM test does **not** require sleeve-seam testing unless a claim is made as to the imperviousness of the sleeve-seam. Thus, Cardinal's position that Kimberly-Clark gown is not or never has been impervious at all, and that it cannot make **any** imperviousness claim simply because the sleeve-seams "leak," appears to be untenable. If Kimberly-Clark's advertising creates an impression among its consumers that its seams are secure, and that impression was in fact false, then there could be a viable claim.

*(ii) Private Enforcement of FDCA Barred*

Next, Kimberly-Clark argues that Cardinal's allegations that Kimberly-Clark markets "misbranded" or "adulterated" product are barred by 21 U.S.C § 337(a)'s prohibition of private actions to enforce the FDCA. Kimberly-Clark points to several instances in Cardinal's counterclaims where it alleges the advertisements are "adulterated" or "misbranded." These are, according to Kimberly-Clark, terms of art used by the FDA that signal Cardinal's intent to enforce the FDCA and the FDA's regulations. Thus, "Cardinal's claim that the current MicroCool(R) line of gowns does not meet the claims set forth in Kimberly-Clark's 1998 510(k) is an impermissible attempt to challenge the FDA's clearance through a private right of action[,] [and] [j]udgment on the pleadings should be granted." [Doc. No. 179-1, at 19].

Cardinal does not dispute that § 337(a) prohibits such a private right of action. However, it argues the "passing references" to Kimberly-Clark's gowns being "'misbranded or adulterated' . . . do not transform Cardinal's claim into one seeking to enforce the FDCA." [Doc. No. 191, at 19]. Cardinal's characterization of its use of these buzzwords as "passing references" is a stretch: the frequency and context of their use indicate they were intentional and calculated. In two instances, Cardinal specifically alleges the KC400 MicroCool gown is a

misbranded or adulterated product "under the FDCA." Am. Countercl. ¶ 73 [Doc. No. 132] ("[T]he KC400 MicroCool gown being marketed by Kimberly-Clark . . . is also a misbranded or adulterated product under the FDCA."); id. ¶ 101 ("Kimberly-Clark's [sic] is marketing a misbranded and adulterated product under the FDCA"). Thus, to the extent Cardinal is attempting to privately enforce the FDCA and brings claims based on violations "under the FDCA," those claims are barred.

However, read in context, Cardinal's primary allegations--even in those same paragraphs--are that Kimberly-Clark's marketing creates false, misleading impressions among consumers as to the qualities of the MicroCool gowns. See id. Notwithstanding the colorful (or sloppy) language in the Amended Counterclaims, Cardinal's brief makes clear that the claims it is bringing are based on false advertising rather than adulterating or misbranding as those terms are used under the FDCA. Thus, the court will not dismiss the counterclaims in their entirety based on the references to these FDCA terms.

### (iii) State-Law Safe Harbors

Kimberly-Clark also argues three of Cardinal's four state-law claims are barred based on those states' safe harbor statutes. Georgia, Connecticut, and Illinois each have similar safe harbor provisions exempting actions in compliance with other laws or

governmental rulings. O.C.G.A. § 10-1-374(a)(1); Conn. Gen. Stat. § 42-110c(a); 815 Ill. Comp. Stat. 510/4. Of course, the other law or governmental ruling Kimberly-Clark relies on is the same FDA approval it bases its preclusion and preemption argument upon. Thus, for the same reasons the court refuses to grant judgment on the pleadings for the Lanham Act claims, the court cannot hold state-law safe harbors exempt these state-law claims.

*(iv) Standing for California Unfair Competition*

Finally, Kimberly-Clark argues the counterclaim based on California's false advertising and unfair competition law must be dismissed because Cardinal lacks standing. Cardinal's claims under California law allege violations of California unfair competition and false advertising law, Cal. Bus. & Prof. Code §§ 17200, 17500.

Standing under these claims requires a plaintiff to allege "(1) a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) . . . that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." Kwikset Corp. v. Superior Court, 246 P.3d 877, 885 (Cal. 2011). The second prong of this test requires "actual reliance on the allegedly deceptive or misleading statements," although the misrepresentations do not have to be the "sole" or "decisive cause of the injury-producing conduct." Id. at 888.

Kimberly-Clark argues in its motion that Cardinal has to allege it suffered some harm caused by its reliance on the alleged false "impervious" statements. Cardinal responds by arguing that it has purchased, for redistribution purposes, Kimberly-Clark's falsely-advertised gowns and, at minimum, paid a higher price for those gowns than it otherwise would have based on the false claims. Kimberly-Clark admits Cardinal purchased and re-sold Kimberly-Clark's gowns. Answer to Am. Countercl. ¶¶ 5, 46, 74 [Doc. No. 133]. Kimberly-Clark also argues Cardinal could not have **justifiably** relied on any supposed misrepresentation because Cardinal had "full knowledge" of its own testing showing the Kimberly-Clark gowns were not impervious: Cardinal first notified Kimberly-Clark of purported failed tests for imperviousness in 2002, Am. Countercl. ¶¶ 34-35 [Doc. No. 132], and performed additional comparative testing of the parties' gowns in 2008, id. ¶¶ 36-37. Thus, by Kimberly-Clark's reasoning, you cannot justifiably rely on the truth of a statement you know to be false.

The court agrees. Since at least 2002, Cardinal believed the "impervious" statements in Kimberly-Clark's advertising were false. Yet it continued to purchase and resell Kimberly-Clark's gowns. As the California Supreme Court explained in Kwikset, the reliance component of standing under the California statute means the plaintiff must allege it was "motivated to act or refrain from

26

action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." 246 P.3d at 888 n.10; see also id. at 890 (stating a plaintiff can satisfy standing by alleging he "would not have bought the product but for the misrepresentation"). Here, Cardinal continued to purchase Kimberly-Clark's gowns even after it knew they were allegedly falsely-labeled. Therefore, any economic injury Cardinal may have suffered cannot have been caused by its justifiable reliance on the misrepresentation. Cardinal lacks standing for Count IV of its counterclaims, so that count is DISMISSED.

### (iv) 2009 510(k) Is Not Commercial Speech

Finally, without pointing to a particular claim it seeks to dismiss, Kimberly-Clark argues that Cardinal's false advertising allegations tied to the 2009 510(k) approval are improper because the 501(k) submission is not commercial speech. In 2009, Kimberly-Clark sought and received FDA approval for a new version of its gown that "meet[s] the Level 4 Requirements of the AAMI Liquid Barrier classifications," which includes testing of the sleeve-seams. The FDA approved Kimberly-Clark's submission so that Kimberly-Clark would be able to make the "AAMI Level 4" claims with the new gown. However, Kimberly-Clark argues it never actually sold the new gown or made the express AAMI Level 4 claims. Cardinal does not allege the new gown was sold or that any express AAMI Level 4

claim was made. But Cardinal does allege and argue consumers were deceived by the "existence" of the 510(k) submission and approval: "Using the same [product] name [Kimberly-Clark] used in the 510(k) submission deceives consumers because they believe that they are buying the gown listed in Kimberly-Clark's 2009 510(k) submission (i.e., consumers think that they are buying a gown with a new sleeve design, not the old gown that leaks at the sleeve seams)." [Doc. No. 191, at 6].

Cardinal cannot base false advertising allegations on statements about the existence of the 501(k). A false advertising Lanham Act claim requires a false or misleading representation made "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Although the Eleventh Circuit has not articulated a test to determine whether misrepresentations are commercial advertising or promotion within the meaning of the Lanham Act, district courts in this circuit have applied the four-part test set forth in Gordon & Breach Science Publishers S.A. v. American Institute of Physics, 859 F. Supp. 1521 (S.D.N.Y. 1994), and adopted by the majority of other circuits. See Futuristic Fences, Inc. v. Illusion Fence Corp., 558 F. Supp. 2d 1270, 10 (S.D. Fla. 2008) (citing district court cases). Under that test:

> In order for representations to constitute 'commercial advertising or promotion' . . ., they must be: (1) commercial speech; (2) by a defendant who is in

> commercial competition with plaintiff; (3) for the
> purpose of influencing consumers to buy defendant's goods
> or services. While the representations need not be made
> in a 'classical advertising campaign,' but may consist
> instead of more informal types of 'promotion,' the
> representations (4) must be disseminated sufficiently to
> the relevant purchasing public to constitute
> 'advertising' or 'promotion' within that industry.

Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996)

(quoting Gordon & Breach, 859 F. Supp. at 1535-36).

As noted, Cardinal does not allege Kimberly-Clark used any of the statements regarding AAMI Level 4 that the FDA approved in 2009 in any advertising in the classical sense. Rather, it is the "existence" of the 510(k), available on the FDA website, that Cardinal claims makes Kimberly-Clark's actual advertisements misleading. But the 510(k) was not submitted "for the purpose of influencing consumers" to buy the existing MicroCool gown; rather, it was made to gain FDA clearance of the marketing claims for the **new** version of the gown. Further, while the FDA approved the statements regarding the new product, Kimberly-Clark was not obligated to start selling the new product using those statements. Under Cardinal's theory, any time a company seeks approval of a new version of the product with new features or claims that do not apply to the current version and the company seeks to market the product under the same name, that party could be liable for false

29

advertising before the new version of the product is ready to go to market.

This is not the type of "commercial advertising or promotion" the Lanham Act governs. Accordingly, while not dismissing any counterclaims, the court concludes Cardinal cannot proceed on its Lanham Act false advertising counts on the basis of any allegations regarding the existence of the 2009 510(k) submission or its alleged impact on consumers' purchases of the MicroCool gown for sale at that time.

### 3.   Conclusion of Motions for Judgment on the Pleadings

In sum, for the most part, neither party has carried its burden to show judgment on the pleadings is appropriate. The only exception is that Cardinal does not have standing to assert claims for unfair competition and false advertising under California law, and Cardinal cannot base its Lanham Act false advertising claims on the existence of the 510(k) submission or approval. Therefore, Cardinal's motion for judgment on the pleadings is DENIED [Doc. No. 178], and Kimberly-Clark's counter-motion [Doc. No. 179] is DENIED IN PART and GRANTED IN PART.

### B.   Cardinal's Motion for Rule 11 Sanctions [Doc. No. 183]

Finally, the court addresses and denies Cardinal's motion for Rule 11 sanctions because Kimberly-Clark's allegations are not "objectively frivolous." Essentially, Cardinal brings its motion

for sanctions because it believes Kimberly-Clark made "factual allegations in its pleadings that are not supported by evidentiary facts" and made a "specious legal argument that is unsupportable" and "goes well beyond the scope of permissible advocacy." Mot. for Sanctions 1 [Doc. No. 183]. The false factual allegations and "specious legal argument" are essentially the same bases Cardinal raised in its motion for judgment on the pleadings. Of course, the court has now rejected Cardinal's argument and denied that motion for judgment on the pleadings. So, if anyone is making a "specious legal argument" here, it would appear to be Cardinal.

Cardinal raises new, or perhaps clarified, arguments in its motion. As Cardinal tells it, Kimberly-Clark's description (to the court) of its surgical gown as "impervious," and its prosecution of false advertising claims against Cardinal, are objectively frivolous because, at best, the gowns "may be constructed from impervious material, but that does not mean the resulting gown itself is impervious." Id. at 4; accord Reply Br. 1 [Doc. No. 207] (opening its reply, "'Gown material' is not the same as 'gown[,]' . . . [and] the obvious and unmistakable differences between these phrases make Kimberly-Clark's arguments frivolous and sanctions appropriate."). Cardinal supports this argument by principally citing to W.L. Gore & Associates, Inc. v. Totes Inc., 788 F. Supp. 800 (D. Del. 1992), which granted a preliminary injunction to

prevent defendant Totes from making claims that its golf rainsuit was waterproof. In that case, the court found Totes's advertisements had "inferred" waterproofness applied to the entire garment, although evidence showed some portions were only water "resistant." Thus, the court found the plaintiff was likely to succeed on its false advertising claim. Id. at 806-07.

Even if the court were to apply the "entire gown" reasoning as in Totes, it is not objectively frivolous for Kimberly-Clark to have alleged and argued for a result contrary to this non-binding district court order. Moreover, the procedural posture of the Totes order was on a motion for preliminary injunction, where the court acts as fact-finder and determines whether the movant is likely to succeed on the merits. Totes, 788 F.Supp. at 807 ("[T]his Court **finds** that 'totes' inferred that every inch of the entire suit was uniformly waterproof . . . . This Court **is convinced** that technical industry standards are often irrelevant to consumer expectations and . . . golfing consumers will expect that they will not get wet . . . ." (emphasis added)); see also Fed. R. Civ. P. 52(a). The motions and posture of this case so far have required the court to make only legal conclusions, not factual determinations.

Moreover, based on the materials submitted to the court, it appears reasonable, at minimum, to say one can "pass" the ASTM F1671 test without testing the seams, as long as "seams are [not]

claimed to offer the same protection as the material." ASTM Test Method § 10.1.1.2 [Doc. No. 183-1, at 7]. While Cardinal ridicules Kimberly-Clark's addition of the word "express" to the condition in 10.1.1.2--and it may be right, "express" does not appear in that test section--Cardinal also ignores the conditional language regarding when testing specimens must contain seams. At a minimum, the FDA appears to have agreed with Kimberly-Clark's interpretation of ASTM and believed the MircoCool was an impervious "gown" (rather than merely constructed from impervious "gown material") in 1998, despite knowing the sleeve seams were not tested.

As the court has explained earlier in this order, in the procedural posture of these motions the court will not say definitively what "impervious" means as a matter of law and for all purposes in this action. But certainly, the FDA's approval must be considered. And with such consideration, Kimberly-Clark appears to have at least some basis for its litigation position (including that the 1998 FDA approval gives it a complete "safe harbor" for its imperviousness claims), even if the court or a jury ultimately rejects that position. Thus, Cardinal's argument that "Kimberly-Clark has no evidentiary basis to tell the Court that its gowns are impervious," [Doc. No. 207, at 2], is simply wrong. Having this basis is sufficient to reject Cardinal's motion for sanctions.

Cardinal's motion for Rule 11 [Doc. No. 183] sanctions based on a supposedly "objectively frivolous" representation and argument to the court is DENIED.

## V.   Conclusion

The parties' cross motions to vacate dismissal and reopen this case [Doc. Nos. 218, 219] are GRANTED IN PART. The court's June 1, 2011, order administratively closing the action [Doc. No. 215] is VACATED. Cardinal's motion to reopen [Doc. No. 218] is DENIED IN PART, to the extent it seeks to enforce a settlement agreement that was not binding on the parties. Kimberly-Clark's motion to reopen [Doc. No. 219] is DENIED IN PART as MOOT, to the extent it seeks a lift of the stay.

Cardinal's motion for judgment on the pleadings [Doc. No. 178] is DENIED. Kimberly-Clark's motion for judgment on the pleadings [Doc. No. 179] is DENIED IN PART and GRANTED IN PART. Count IV of Cardinal's amended counterclaims [Doc. No. 132], raising claims under California law, is DISMISSED. Pursuant to the court's order of May 4, 2011 [Doc. No. 211], the stay is automatically lifted due to the court's ruling on the motions for judgment on the pleadings.

Cardinal's motion for Rule 11 sanctions [Doc. No. 183] is DENIED.

Because of the time lapse since the filing of the motions pending at the time the case was administratively closed, the

34

parties are ORDERED to file a status report discussing whether any issues may have been resolved or been rendered moot since the last activity in this case, and what steps the court should take next (including the possible re-appointment of a special master).[9] The court asks for a single filing in response to this order.[10] The status report must be filed no later than Friday, October 5. The court will schedule a status conference or issue further orders at that time as it deems necessary.

SO ORDERED, this  7th  day of September, 2012.

/s/Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

---

[9] For example, according to the special master's R&R of April 6, 2011 [Doc. No. 187], several motions were pending at the time of the stay and administrative closure. Of those, Docket Numbers 148, 157, 160, 181, 182, 185, and 195 are not addressed by this order.

[10] The court asks for a single filing in response to this order. Like in a Joint Preliminary Report and Discovery Plan, the parties may state to what extent they agree on issues or next steps as appropriate.